Argued June 16; affirmed November 24, 1931; rehearing denied
January 19, 1932

# WALLOWA NATIONAL BANK *v.* SEVIER
# COMMISSION CO. ET AL.
### (5 P. (2d) 100)

*John F. Reilly,* of Portland (Wilson & Reilly, of Portland, on the brief), for appellants.

*Isham N. Smith* and *Palmer L. Fales,* both of Portland (Platt, Platt, Fales, Smith & Black, of Portland, on the brief), for respondent.

CAMPBELL, J. This is an action brought by plaintiff to recover $13,999.33, that being the net proceeds from the sale of certain livestock sold on the

North Portland Stockyards by defendant, Sevier Commission Company. One H. C. Hansen was engaged in buying livestock through Eastern Oregon and paying for said livestock by checks on the Wallowa National Bank, the bank extending credit sufficient to cover such checks. When the stock was shipped to the North Portland Stockyards and sold, the net proceeds of the sale were to be deposited in the First National Bank of Portland, to the credit of the Wallowa National Bank, in accordance with the following order, which order was executed by said H. C. Hansen June 29, 1925, and delivered to and accepted on the same day by the defendant, Sevier Commission Company:

"Please place all proceeds except shipping expenses, received from my shipments of livestock, with the First National Bank of Portland for the credit of the Wallowa National Bank of Enterprise, Oregon.

"This order to be in force until further instructions from the Wallowa National Bank."

This order was prepared by the Sevier Commission Company, who had the shipper Hansen sign and deliver the same on the express request of plaintiff.

The transaction giving rise to the present action was about as follows: The latter part of November, 1926, said Hansen shipped to the North Portland Stockyards, consigned to the Sevier Commission Company as a market agency, certain livestock. This stock arrived at the stockyards on Sunday, November 28, 1926. On Monday, November 29, the livestock was sold for the net sum of $13,999.33, after paying all commissions and charges; the payment being made by check of solvent makers on solvent banks. This sum was deposited in the Bank of Kenton to the credit of the "Sevier Commission Company, Market Agency,"

and the check of said agency mailed to the First National Bank of Portland, and received by it November 30, 1926, and by it deposited in the Federal Reserve Bank, Portland Branch, for collection. The Federal Reserve Bank mailed the check to the Bank of Kenton, where it was received on December 2, 1926. The Bank of Kenton then issued its draft on the Bank of California in Portland, Oregon, in payment of said check and some others. The drawee bank refused to accept or honor said draft and the check was again returned to the First National Bank, unpaid and unhonored and has not since nor ever will be paid. On December 3, the Bank of Kenton was closed and taken over by the banking department of the state of Oregon for liquidation.

The question at issue is whether plaintiff or defendants must stand the loss. It is practically admitted that if the defendant, Sevier Commission Company, is liable so is its bonding company, the defendant, Hartford Accident and Indemnity Company of Hartford, Connecticut, each of the defendants having filed identical defenses.

The Bank of Kenton, the First National Bank of Portland, and the Federal Reserve Bank, Portland Branch, are and were at the time of the transaction complained of all located within the city of Portland, Oregon.

■ The North Portland Stockyards and the defendant, Sevier Commission Company as a market agency, fall within the purview of an act of Congress of August 15, 1921, known as the Packers and Stockyards Act of 1921, and amendments thereto. This act authorized the Secretary of Agriculture "to make such rules,

regulations and orders as may be necessary to carry out the provisions of this chapter. * * *": 7 U. S. C. A., chapter 9, section 228.

The gist of the Packers and Stockyards Act of 1921 is in the following sections:

"It shall be the duty of every stockyard owner and market agency to furnish upon reasonable request, without discrimination, reasonable stockyard services at such stockyard." 7 U. S. C. A., Ch. 9, Sec. 205.

"It shall be the duty of every stockyard owner and market agency to establish, observe, and enforce just, reasonable, and non-discriminatory regulations and practices in respect to the furnishing of stockyard services, and every unjust, unreasonable, or discriminatory regulation or practice is prohibited and declared to be unlawful." 7 U. S. C. A., Ch. 9, Sec. 208.

"The term 'stockyard services' means services or facilities furnished at a stockyard in connection with the receiving, buying or selling on a commission basis, or otherwise, marketing, feeding, watering, holding, delivery, shipment, weighing, or handling in commerce, of livestock." 7 U. S. C. A., Ch. 9, Sec. 201, Sub-sec.(b).

During the time of the transaction herein, the following regulation, approved by the Secretary of Agriculture, was in force in the Portland stockyards:

"Every market agency connected with the Portland Livestock Exchange shall keep a separate bank account, the same to have a designation which clearly shows its agency character. Into this account shall be deposited all funds received from the sale of, or for the purchase of, livestock handled on a commission basis, and no disbursements shall be made from this account except in accord with the faithful and prompt accounting by the market agency in its capacity as such."

The principal objective of the Packers and Stockyards Act of 1921 was to compel those operating a

stockyard, and those market agencies operating in conjunction with stockyards, to furnish equal facilities to all shippers of livestock at a uniform cost.

It is not discrimination between shippers to deposit the proceeds from any particular sale in a bank designated by the shipper, when such bank is in the same town as the bank wherein other shippers' funds are deposited. There was nothing in the order, executed by the shipper Hansen and accepted by defendant, Sevier Commission Company, directing the deposit of all proceeds from Hansen's shipments in the First National Bank of Portland to the credit of the Wallowa National Bank, that is embraced within the term "stockyard service" as defined by the Packers and Stockyards Act of 1921, above quoted.

The answers of both defendants allege in effect: That on the day of sale, the defendant, Sevier Commission Company, "deposited the net proceeds from said sale in the Bank of Kenton." From these allegations it appears that all that was done was to deposit the *net* proceeds. It would not violate any of the provisions of the Packers and Stockyards Act of 1921 nor the rule of the Secretary of Agriculture in rendering "stockyard service" to have deposited the net proceeds in the First National Bank of Portland. The rule of the Secretary of Agriculture above quoted does not require that the proceeds shall be deposited in any particular bank, and the commission company would not be violating this rule by a deposit in the First National Bank in accordance with the order of the shipper. The order required the net proceeds to be so deposited. The only authority the First National Bank had, so far as this particular fund was concerned, was to receive and deposit it to the credit of the plaintiff:

(25 C. J. 372, Sec. 61). The extent of this authority was known to the defendant, Sevier Commission Company. The bank was not the agent of plaintiff for the collection of the fund. The obligation of the Sevier Commission Company was not to mail its own check, but to deposit the proceeds. It may be that the First National Bank is under some obligation to defendant for failure to present the check to the Bank of Kenton immediately or within a reasonable time, but this we do not pass upon. The livestock was sold to the defendant, Sevier Commission Company, and the shipper's order was not complied with regarding the disposition of the net proceeds.

■ The order as between the original parties to it, amounted to a complete assignment, where the rights of no innocent parties intervened. It was so understood and treated by the shipper as well as by the Sevier Commission Company and the plaintiff.

It is claimed by defendants that on former occasions the defendant, Sevier Commission Company, transmitted the proceeds of sales in the same manner as they did on the sale in question, but there is no testimony in the case showing that plaintiff had any knowledge thereof. On the strength of the order made by Hansen and accepted by defendant, Sevier Commission Company, and in reliance thereon, the plaintiff advanced the money to Hansen. Of this the Sevier Commission Company had full knowledge.

Counsel for appellants present a very able brief on how and when a check should be presented for payment to the bank on which it is drawn, but, as between the parties hereto, we do not deem that question is at issue.

We fully agree with counsel that the Packers and Stockyards Act of 1921 was largely copied from, where

applicable, and is analagous to the Interstate Commerce Act. It is intended to do for the shipper of livestock to stockyards in the way of stockyard service, what the Interstate Commerce Act does for the shippers in the matter of transportation.

We agree with the proposition of counsel for appellant, that "it is elementary that a custom of business is read into contracts where there is ambiguity in the terms used." We, however, can not find any ambiguity in the terms of the order of Hansen above referred to. Unlike the modern marriage contract, the word "obey" was not omitted. It is probably true that the custom of the defendant, Sevier Commission Company, was to deposit its receipts in the Bank of Kenton, but the order of the shipper above referred to was for the very purpose of avoiding that custom so far as the plaintiff herein was concerned.

■ We also agree with counsel that the word "proceeds" may have different meanings under varying circumstances, but when, as a matter of fact, proceeds are cash or checks by solvent makers, on solvent banks, the word "proceeds" means just that.

There is no material question of fact in controversy, so the court did not err in overruling defendants' motion for a non-suit nor in directing a verdict for plaintiff. There are some exceptions taken to the court's ruling on the admission of certain evidence of plaintiff and to the exclusion of certain evidence of defendants. We, however, deem the rulings immaterial under the view of the law as expressed herein. It follows that the judgment of the circuit court should be affirmed.

It is so ordered.